Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1707 | **DATE** | 9/26/2002 |
| **CASE TITLE** | Johnnie Ross vs. Kenneth Briley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The petition for writ of habeas corpus is denied. Enter memorandum opinion and order.

(11) ■ [For further detail see

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 3 0 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 36 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 SEP 27 PM 4:08 | | |
| SLB | courtroom deputy's initials | FILED | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel.
JOHNNIE ROSS,

    Petitioner,

v.

KENNETH BRILEY,

    Respondent.

No. 00 C 1707

Judge George W. Lindberg

**MEMORANDUM OPINION AND ORDER**

Johnnie Ross, a prisoner in custody of the Illinois Department of Corrections, has filed a petition for federal habeas corpus relief. For the reasons stated below, the petition is denied.

### I. Background[1]

On June 9, 1993, petitioner's aunts, Lilly Golden and Jerleene Golden, and petitioner's grandmother, Ruthie Golden, were in their apartment. Sometime after 11:00 a.m., petitioner rang the doorbell. Petitioner was not welcome in the Goldens' home, and Lilly asked him to leave. Petitioner kept looking out the window and stalling, and asked for a glass of water. The doorbell rang again, and Lilly observed two men outside the door. Lilly again asked petitioner to leave. Petitioner left, stopping to talk with the two men outside the apartment before walking away. Lilly locked the door, and spoke to the two men through a window. They told her that they were there to check a flooded basement. Lilly responded that there was no flood, and the men left in the same direction in which petitioner had gone. A minute or two later, the two men returned,

---

[1] These facts are drawn from the opinion of the Illinois Appellate Court, People v. Ross, No. 94-3964 (2d Div. Jan. 14, 1997); under 28 U.S.C. 2254(e)(1), the court presumes the state appellate court's factual determinations are correct for the purpose of habeas review. See, e.g., Abrams v. Barnett, 121 F.3d 1036, 1038 (7th Cir. 1997).

asked for Lilly by name and said that she had called for them. Lilly responded that she had not called anyone about a flooded basement. The men eventually left in a car.

Lilly remained uneasy, and went into the yard to look around. As she went back into her building, she saw the two men returning. She attempted to return to her apartment, but the men kicked in the hallway door and entered. One of the men pointed a pistol at Lilly, who ran to a bathroom and hid. She heard the men yelling, "where's the money?" and then heard gunshots. When the apartment was quiet, Lilly emerged and discovered Jerleene and Ruthie on the floor, bleeding. Lilly's bedroom had been ransacked, and a plastic bag of money was missing. Petitioner had seen Jerleene retrieve money from the bag on several prior occasions. Jerleene died as a result of her gunshot wounds; Ruthie survived, but required surgery and extensive rehabilitation. The next day, petitioner admitted to the police that he had helped plan the robbery with two friends.

In 1994, petitioner was convicted of murder, attempt murder, three counts of armed robbery, and aggravated battery with a firearm. He was sentenced to sixty years imprisonment for the murder conviction, a consecutive thirty-year term for the attempt murder conviction, and a concurrent thirty-year term for the remaining convictions, for a total term of ninety years imprisonment.

On January 14, 1997, the appellate court affirmed petitioner's convictions of murder, attempt murder, and one of the three armed robbery convictions. The appellate court vacated the aggravated battery conviction and two of the armed robbery convictions, and remanded the case to the trial court for resentencing on the remaining armed robbery conviction. On remand, the trial court resentenced petitioner to a concurrent thirty-year sentence on the armed robbery

2

conviction. The Illinois Supreme Court denied petitioner's petition for leave to appeal on June 4, 1997. Between 1997 and 2000, petitioner filed four petitions for post-conviction relief. The trial court dismissed each petition, the appellate court affirmed each of the dismissals, and the Illinois Supreme Court denied leave to appeal as to the three dismissals for which petitioner sought review.

Petitioner raises the following issues in the instant habeas corpus petition: (1) ineffective assistance of trial counsel under the Sixth Amendment, due process, and equal protection, for trial counsel's failure to file a motion to quash arrest and suppress evidence based on lack of probable cause; (2) ineffective assistance of appellate counsel under the Sixth Amendment, due process, and equal protection, for appellate counsel's failure to raise the issue of ineffective assistance of trial counsel; (3) whether the trial court's denial of petitioner's motion to suppress statements violated his Fourth and Fifth Amendment rights, due process, and equal protection; and (4) whether petitioner was sentenced to consecutive terms of imprisonment in violation of the Sixth Amendment, due process, and equal protection, under Apprendi v. New Jersey, 530 U.S. 466 (2000).

## II. Discussion

### A. Standard of Review

The court must evaluate this habeas petition according to 28 U.S.C. § 2254. Only claims that the petitioner is being held in state custody in violation of federal constitutional or statutory violations are appropriately raised in habeas petitions. 28 U.S.C. § 2254(a). The court may not grant relief for claims that a state court has adjudicated on their merits unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

3

established federal law as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state appellate court's factual summary is presumed correct unless the petitioner rebuts it with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Before a federal court can consider the merits of a petition for habeas corpus, petitioner must overcome two procedural hurdles: exhaustion of state court remedies and lack of procedural default. See 28 U.S.C. § 2254(b). In this case, respondent concedes that petitioner has exhausted his state court remedies. However, respondent contends that the court should not reach the merits of the portion of petitioner's ineffective assistance of trial and appellate counsel claims that is based on equal protection and due process because he failed to fairly present that portion of those claims to the state courts. For the same reason, respondent argues that the court should not reach the merits of the portion of petitioner's claim regarding the denial of his motion to suppress statements, that is based on the Fourth Amendment and equal protection.[2]

Before a federal court may review constitutional claims made in a habeas corpus petition, the petitioner must have fully and fairly presented those claims to the state courts. Chambers v. McCaughtry, 264 F.3d 732, 737 (7th Cir. 2001), cert. denied, 122 S. Ct. 1178 (2002). Both the operative facts and controlling legal principles of a constitutional claim must have been submitted to the state courts. Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992). Factors

---

[2] Respondent also argues, for the same reason, that the court should not reach the merits of the portion of petitioner's Apprendi claim that is based on an equal protection argument. However, the court need not address this argument; as discussed below, the court does not reach the merits of any portion of petitioner's Apprendi claim because Apprendi does not apply retroactively.

4

relevant to this analysis include whether the petitioner's state court argument: (1) relied on pertinent federal cases using constitutional analysis; (2) relied on state cases applying constitutional analysis to a similar factual situation; (3) asserted the claim in terms so particular as to call to mind a specific constitutional right; or (4) alleged a pattern of facts that is well within the mainstream of constitutional litigation. Id. at 1473-74. "A mere 'passing reference' to a constitutional issue certainly does not suffice." Chambers, 264 F.3d at 738.

Here, although the introductory portion of petitioner's post conviction petition states that "[p]etitioner was denied his sixth amendment, and fourtheenth [sic] amendment right to due process and equal protection and effective assistance of counsel," petitioner provides no elaboration as to the due process and equal protection violations, and cites no due process or equal protection cases. References to due process and equal protection are similarly sparse in petitioner's brief in the appellate court (and in his habeas corpus petition in this court, for that matter), and more so in his petition for leave to appeal to the Illinois Supreme Court. Nor did petitioner present an argument based on the Fourth Amendment or equal protection to the Illinois Appellate Court or the Illinois Supreme Court, regarding the denial of his motion to suppress statements. The court concludes that petitioner's ineffective assistance of trial and appellate counsel claims are procedurally defaulted to the extent that they are based on due process and equal protection violations. In addition, petitioner's claim regarding the denial of his motion to suppress statements is procedurally defaulted to the extent that it is grounded in the Fourth Amendment and equal protection.

### B. Ineffective Assistance of Counsel

The court now turns to the merits of petitioner's remaining claims. Petitioner first claims

that he was deprived of effective assistance of trial counsel under the Sixth Amendment, because counsel failed to move to quash arrest and suppress evidence based on lack of probable cause. To state a valid claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), petitioner must establish that: (1) his counsel's performance was objectively unreasonable; and (2) but for his counsel's deficient representation, the outcome would have been different. Id. at 687-88. There is a strong presumption that a criminal defendant's counsel rendered assistance falling within an objective standard of reasonableness. Mason v. Godinez, 47 F.3d 852, 855 (7th Cir. 1995).

In its order denying petitioner's post-conviction petition, the trial court noted that police Detective McDonald had testified that he spoke with Lilly Golden at the crime scene, and that Lilly told him that petitioner had been involved in the robbery. Detective McDonald further testified that Lilly was interviewed again at the police station. The trial court concluded that Lilly's identification of petitioner as having been involved in the crime, combined with the fact that petitioner was Lilly's nephew, and as such, well known to her, gave the police sufficient information to warrant a reasonable belief on their part that petitioner had committed the offense.

Petitioner argues that the trial court erred in considering Detective McDonald's trial testimony as support for trial counsel's decision not to file a motion to suppress. According to petitioner, Detective McDonald's police report does not mention Lilly's statement identifying petitioner as being involved in the robbery, and his trial counsel thus could not have had this information prior to trial. A review of the initial police report, however, shows that petitioner is listed as "WANTED," as "IDENTIFIED BY" Lilly Golden. In addition, the report details petitioner's suspicious actions in the Golden home immediately prior to the robbery, and notes

6

that petitioner knew that cash was kept in the home. Merely by reading the police report, and even without regard to the trial testimony, petitioner's trial counsel had sufficient reason to conclude that there was probable cause for petitioner's arrest, and this court will not second-guess his choice of strategy. See Strickland, 466 U.S. at 690-91 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation").

Petitioner also fails to show that the outcome of his trial would have been different if trial counsel had moved to quash the arrest and suppress evidence. The evidence known to the police at the time of petitioner's arrest supports a finding of probable cause.[3] Even if petitioner's arrest had been improper, however, there still would not have been prejudice to his trial. Absent evidence that calls into question the fairness of the trial, "under Strickland no prejudice exists when evidence gathered in violation of the Fourth Amendment is erroneously admitted at trial." Holman v. Page, 95 F.3d 481, 490, 492 (7th Cir. 1996). Accordingly, this court finds that the state court did not err in its application of Strickland.

Since trial counsel's performance was not deficient under Strickland, neither was appellate counsel's failure to raise ineffective assistance of trial counsel. Appellate counsel's performance is only deficient if "there is a reasonable probability that raising the issue would

---

[3] Although petitioner argues that Detective McDonald's testimony should be disregarded as unreliable because the detective's police report does not mention Lilly's statement, and because Lilly did not testify at trial that she had made the statement, "[f]ederal courts are in no position to redetermine the credibility of witnesses observed by state trial courts." See Kines v. Godinez, 7 F.3d 674, 678 (7th Cir. 1993).

7

have made a difference in the outcome of the appeal." Howard v. Gramley, 225 F.3d 784, 791 (7th Cir. 2000). If trial counsel's failure to file a motion to quash arrest and suppress evidence based on lack of probable cause would not have changed the outcome of the trial, appellate counsel's failure to raise the issue would not have changed the outcome of the appeal.

### C. Denial of Motion to Suppress Statements

Petitioner next argues that he was denied his Fifth and Fourteenth Amendment rights when the trial court denied his motion to suppress his confession. On June 10, 1993, petitioner turned himself in to the police at a police station. According to police witnesses, petitioner was advised of his Miranda rights, and petitioner orally waived those rights. Petitioner initially told the police merely that he had been at his grandmother's apartment, and that he had spent the rest of the day with his girlfriend. When the police confronted petitioner with clothing and cash seized from his girlfriend's house, petitioner asked to speak with an uncle, Mack Golden ("Mack"). Mack testified that the police contacted him and told him that petitioner wanted to speak with him. According to Mack, he met with petitioner alone, and petitioner told him that he had brought the two men to the Golden apartment to rob the Goldens. Petitioner told Mack the names of the two men, and Mack advised petitioner to give the information to the police. Mack denied threatening petitioner. Petitioner then admitted to the police that he had planned the robbery.

Petitioner testified that he did not receive or waive his Miranda rights. He denied requesting to speak with his uncle, and claimed that he was afraid of Mack and believed that Mack was going to kill him. He testified that when he told Mack that he had no information about the crime, Mack started walking toward him and petitioner called out to the police officers

8

for help. According to petitioner, after Mack left, the police officers told him that if petitioner did not tell them what they wanted to hear, they would let Mack back in and would not help petitioner if he started screaming.

A police detective testified on rebuttal that petitioner specifically asked to speak with Mack, and had not screamed while in the room with Mack.

Petitioner claims that his confession should have been suppressed because he was not advised of his Miranda rights, and did not waive those rights. He further claims that the police used Mack as a police agent to obtain involuntary statements from him. However, on petitioner's direct appeal, the Illinois Appellate Court noted that the trial court had deemed the testimony of the police detectives and Mack to be more credible than that of petitioner. The appellate court accepted the trial court's credibility determination, and petitioner has offered this court no reason to disturb the state courts' credibility evaluation. Therefore, this court accepts the state courts' factual findings that petitioner was advised of his Miranda rights, that he waived those rights, that petitioner asked to speak to Mack, and that Mack did not threaten petitioner. See Biskup v. McCaughtry, 20 F.3d 245, 251 (7th Cir. 1994) (federal habeas court must give deference to state court's determination of credibility).

This court cannot conclude that the state courts improperly applied the Supreme Court's clearly established principles to these facts. Even if the police advised petitioner of his Miranda rights only after petitioner spoke with Mack (the appellate court's findings are unclear as to the timing), petitioner's conversation with Mack cannot be construed to be the equivalent of a police interrogation. See Colorado v. Connelly, 479 U.S. 157, 167 (1986) (police coercion is a "necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the

9

Due Process Clause of the Fourteenth Amendment."); Whitehead v. Cowan, 263 F.3d 708, 719 (7th Cir. 2001), cert. denied, 122 S. Ct. 927 (2002) (suspect in custody was not interrogated by police when he confessed to LeAllen Starbuck (a relation by marriage to suspect's sister), and then to police, when police had not instructed Starbuck to ask certain questions and there was no evidence that police were using psychological ploy to get confession through use of Starbuck). Nor does the evidence support a conclusion that the police used Mack to compel petitioner to involuntarily confess. Accordingly, petitioner's petition for habeas corpus is denied as to his claim that the state courts erred in finding his confession admissible.

### D. Apprendi Claim

Finally, petitioner contends that the state court's imposition of consecutive prison sentences for first-degree murder and attempt murder violated his Sixth Amendment rights under Apprendi v. New Jersey, 530 U.S. 466 (2000). According to petitioner, his consecutive sentence was improper because it was based on the trial judge's finding that petitioner had inflicted severe bodily injury in the attempt murder of Ruthie Golden, when the indictment did not contain an allegation of severe bodily injury and the jury did not make such a finding.

In Apprendi, the Supreme Court held that any fact, other than a prior conviction, which increases the penalty for a crime beyond the maximum statutory penalty must be submitted to the jury and proved beyond a reasonable doubt. Apprendi, 530 U.S. at 490. However, the Seventh Circuit Court of Appeals has recently held that Apprendi does not apply retroactively, and thus "does not disturb sentences that became final before June 26, 2000, the date of its release." Curtis v. United States, 294 F.3d 841, 844 (7th Cir. 2002). Here, since petitioner did not file a petition for a writ of certiorari with the United States Supreme Court, his case became final

10

ninety days after the Illinois Supreme Court denied petitioner's petition for leave to appeal on direct appeal on June 4, 1997, long before Apprendi was decided. See Sup. Ct. R. 13. Therefore, Apprendi does not apply to petitioner's claim.

**ORDERED:** The petition for writ of habeas corpus is denied.

ENTER:

George W. Lindberg
Senior United States District Judge

DATED: SEP 2 6 2002